IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **TODD KNUTSON,** | ) | Civil Action No. 7:20-cv-00455 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| **LT. C. HAMILTON, et al.,** | ) | Chief United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Todd Knutson, an inmate in Bureau of Prisons ("BOP") custody proceeding pro se, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). His complaint asserts claims against numerous correctional officers, a doctor, and a nurse, all of whom worked at the United States Penitentiary in Lee County ("USP Lee") at the time of the alleged events. All of his claims arise from events that occurred on July 1 and 2, 2020. He alleges that on July 1, the day he arrived at USP Lee, he was brutally physically assaulted by a group of correctional officers while he was restrained.[1] Thereafter, he was placed in the "Special Housing Unit," where he alleges that about every two hours for approximately twenty-two hours, officers entered his cell and assaulted him.

---

[1] The record contains affidavits disputing Knutson's version of events and specifically disputing that he was assaulted while restrained. The record also includes contemporaneous reports that describe instead that Knutson was refusing to enter his cell, became confrontational with officers, threatened them, and grabbed Officer Dickenson by the vest, took him to the ground, and tried to choke him. Several officers assisted in gaining control of Knutson and escorting him to the SHU. According to those reports, the minimal amount of force was used to regain control of Knutson and place him in restraints. Knutson states in his initial affidavit that he is not complaining about being placed in restraints, but about the assaults after he was already restrained. ECF No. 14 at 1–2 ("I'm not arguing the use of force that was used to put me in restraints at all. My complaint is what the officers did to me while in full restraints well after the main incident. [T]hat's what violated my Eighth Amendment rights."). In his amended complaint, he takes the opposite position and challenges the force used to put him in restraints. Specifically, he alleges that, when initially restraining him, the officers could have simply put handcuffs on him, but instead attempted to take him to the ground. He now asserts that he only grabbed Officer Dickenson as "a natural reaction to attempt to catch" himself before he fell. Am. Compl. 4–5, ECF No. 103.

In addition to Eighth Amendment claims arising from these events, Knutson's amended complaint adds equal protection claims against defendants, based on his assertion that during the assaults, certain officers referred to him as a "piece of transgender s**t," a "transgender motherf***er," and a "transgender b***h."[2] Am. Compl. 2, 8, ECF No. 103. He alleges that this constitutes discrimination and unequal treatment on the basis of his "gender identity."

The defendants who have been served filed a motion to dismiss or, in the alternative, for summary judgment. Among other arguments, they argue that Knutson failed to exhaust his administrative remedies and cannot demonstrate that those remedies were unavailable to him. Defendants' motion also contends that the allegations in Knutson's complaint against the two medical personnel—Dr. Bailey and Nurse Parker—fail to state a claim. ECF No. 107 at 13–14 (describing the allegations as consisting of verbal harassment and an after-the-fact failure to intervene in the assaults against him and arguing that they do not rise to the level of an Eighth Amendment violation). Knutson's response is not yet due to that motion.

Knutson has filed three motions for preliminary injunctive relief, ECF Nos. 2, 4, and 23, which the court previously referred to the magistrate judge for a report and recommendation and a hearing, if he deemed one necessary. Upon the court's review of the record as subsequently supplemented by the parties, however, that reference will be withdrawn, and the court will instead rule on those motions and other motions filed since then.

For the reasons discussed next, Knutson's requests for preliminary injunctive relief will be denied. The court then addresses a number of other pending motions.

---

[2] Throughout this opinion, the court has corrected errors in spelling, capitalization, and grammar when quoting from Knutson's submissions. The court also has redacted profanity.

I.     BACKGROUND

Knutson's amended complaint alleges that, after the initial use-of-force against him on July 1, 2020, defendant correctional officers at USP Lee assaulted him while he was fully restrained and then repeatedly assaulted him, every two hours, while he was in an observation cell and in ambulatory restraints over a twenty-two hour period that followed, ending on the evening of July 2. According to Special Investigative Agent Canfield, prisoners in ambulatory restraints are required to be checked every 15 minutes through the observation cell window. Every two hours, a lieutenant enters the cell to examine the restraints closely for tampering or other safety-related hazards. Other staff members assist by holding a plastic shield between the inmate and the lieutenant. See Canfield Decl. ¶¶ 18–21, ECF No. 58-1. "These review procedures were followed throughout the time [Knutson] was in restraints." Id. ¶ 22. Thus, it appears Knutson is claiming that, during each of the in-cell checks, he was subjected to excessive force.

Knutson also alleges that two of the defendants—a physician and nurse at USP Lee—made comments to him that suggested they knew he was being assaulted by officers or had been assaulted. He alleges that Dr. Bailey, a psychologist at USP Lee, could have stopped the assaults by reporting the staff misconduct, but she did not. He also alleges that Dr. Bailey did not treat him but instead made discriminatory statements to him about his gender identity. As noted, his amended complaint also contains an equal protection claim.

Knutson's motions for preliminary injunction seek two distinct types of requested

3

injunctive relief.³ First, he asks for a transfer out of USP Lee. He claims that all BOP facilities are unsafe for him because the officers at USP Lee will "pass the word on down the line to the next spot." ECF No. 4 at 1. He thus requests that he be transferred to a state facility instead. In a later-filed affidavit, he states that as an alternative to being placed at a state facility, he should at the very least be placed in a "drop-out facility," naming other federal prisons where he says "staff are known to be more understanding of gender choice." ECF No. 14 at 8. Second, he asserts that he fears for his life and is traumatized from the beatings. He thus asks that the court issue an order prohibiting retaliation against him by the involved officers or others.

The court ordered USP Lee's warden, non-party Streeval, to respond to the motion for preliminary injunction. Streeval filed an initial and supplemental response, ECF Nos. 12, 58, and also several separate exhibits, ECF Nos. 65, 66. Streeval offers numerous reasons as to why Knutson is not entitled to the injunctive relief he seeks.⁴ In denying Knutson's motions for preliminary injunctive relief, however, the court focuses only on one: that Knutson has not shown he is likely to succeed on the merits of his claims because the record at this point shows that he has not exhausted his available administrative remedies.

The court also has reviewed and considered the many additional documents and evidence filed by Knutson since his first motion, including ECF Nos. 14, 18, 22, 44, 50, 57, 64, 79, 82, 83,

---

³ His second motion references possible interference with his mail by USP Lee staff. To the extent he seeks injunctive relief to stop any interference with his mail, he is not entitled to it. The record reflects that Knutson has been receiving the court's orders, and he has been able to submit numerous documents for filing.

⁴ Streeval's responses argue that the injunctive relief sought by Knutson is unavailable for at least four other reasons: (1) <u>Bivens</u> cases do not allow for injunctive relief, (2) sovereign immunity precludes relief against the government, (3) Rule 65 prevents injunctive relief against non-parties; and (4) the court cannot direct where an inmate should be confined. Streeval also contends that Knutson's allegations are unsupported and that Knutson has failed to show that he will suffer any irreparable harm in the absence of his requested injunction or that the balance of equities and public interest favor an injunction.

and 94. Very few of these have any bearing on exhaustion or on the substantive claims in his amended complaint. As relevant to his claims, Knutson provides an affidavit from another inmate, Silva, saying he observed Knutson on July 2, 2020, with both eyes black and blue and his face severely battered. ECF No. 44. He also presents evidence that defendants or others made statements to him afterward referencing the prior beatings, which he says is further proof they occurred.[5] Most of the documents, however, contain Knutson's complaints about continuing alleged mistreatment by officers or other staff, and his repeated arguments that this mistreatment entitles him to a transfer.[6] Nowhere does Knutson allege that he has been physically assaulted by anyone since the incidents of July 1 and 2, 2020, more than seven months ago.[7]

## II. DISCUSSION

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991).

---

[5] For example, Knutson alleges that, on September 14, 2020, Officer Brent told him he didn't like him, called him a "mother***er," and then said, "We should beat the fu**k out of you again." ECF No. 14 at 4. He also points to two different comments made by Lt. Hamilton, including one in which he allegedly told Knutson that he should be ashamed of himself after all Hamilton had done for him and that "we could have kept beating the hell out of you for at least another day, then you go off and file on me." ECF No. 18 at 5–6; see also id. at 3 (alleging that Lt. Hamilton told Knutson, "Our motto is to beat the hell out of inmates when they get out of line. This is what we do here at USP Lee. I've been doing this for 19 years."). Knutson also alleges that on August 6, 2020, when he was trying to get the shift lieutenant's attention to complain about the cell he was in, an unnamed officer said, "Say another word and I'll put you in chains and beat the hell out of you all over again." ECF No. 18 at 4.

[6] By way of example, he complains that when officers threatened to beat him, staff refused to "help" (ECF No. 18); that Nurse Parker refused to refill his medication and refused him medical treatment (ECF No. 18 at 5); that Officer Collins refused to provide him with adequate cleaning materials despite the Covid-19 pandemic (ECF No. 50, 82); that several officers, including Officer Turner and Officer Roberts, are not giving him the amount of recreation time that he should receive; and that other others are not allowing him to use the law library, interfering with his ability to submit funds to the court to obtain paperwork, or denying him razors because he was at the library (ECF Nos. 79, 83, 94).

[7] Knutson has provided affidavits describing other inmates being assaulted, "tortured," or otherwise mistreated. E.g., ECF No. 64-1, at 1–10. Those affidavits do not provide direct support for Knutson's claim, though; they relate to other inmates.

5

The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008); League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. Winter, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345–46 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010).

Applying the foregoing standards to Knutson's motions, the court concludes that he is not entitled to preliminary injunctive relief. Most importantly, Knutson cannot satisfy the first Winter factor on the current record. The court is not dismissing Knutson's complaint on the issue of exhaustion at this time and instead will await Knutson's response to defendants' dispositive motion. At the very least, though, Knutson has not shown a likelihood of success on the merits, given his concession that he failed to exhaust administrative remedies as to his claims and the fact that he has not presented evidence showing that those remedies were unavailable.

**A. Exhaustion under the Prison Litigation Reform Act**

The Prison Litigation Reform Act requires a prisoner-plaintiff to exhaust his available administrative remedies prior be bring suit. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). District courts may not "excuse a failure to exhaust." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859–60; see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

Knutson appears to be arguing that the third of these occurred to him. Specifically, Knutson's complaint alleges that he was fearful of further attacks by the correctional officers and that is why he did not attempt to exhaust his administrative remedies. Compl. at 7, ECF No. 1. As to whether his fear (or other prisoners' fears based on threats made to them) rendered the BOP's remedies "unavailable," Streeval urges the court to apply a two-part test that a number of other circuits use, adopted from the Eleventh Circuit's decision in Turner v. Burnside, 541 F.3d

1077, 1085 (11th Cir. 2008). Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (adopting the Turner test); McBride v. Lopez, 807 F.3d 982, 987-88 (9th Cir. 2015) (same); Tuckel, 660 F.3d at 1254 (same). The test requires an inmate to show: (1) subjectively, that "the threat did actually deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process;" and (2) objectively, that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Rinaldi, 904 F.3d at 268 (quoting Turner, 541 F.3d at 1085). Streeval does not argue, and the court's research does not disclose, that the Fourth Circuit has expressly adopted—or rejected—the Turner test. But nothing prohibits its use and because it is both helpful and appropriate, the court will apply it here.

**B. The BOP's Administrative Remedy Procedure**

The BOP's administrative remedy procedure is relatively straightforward, and basically involves three steps: the filing of an informal complaint, the filing of a formal complaint, and two levels of appeal. Slightly different procedures apply to appeals of disciplinary hearings, but for a claim, like Knutson's, alleging staff misconduct, the first step requires the inmate to "present an issue of concern informally to the staff." 28 C.F.R. § 542.13(a). Each Warden has established procedures for inmates at his institution to do so. Id.

Second, if an inmate is unable to resolve his complaint informally, he may file a formal written complaint (an "administrative remedy request") with the institution on the proper form within twenty calendar days of the incident at issue. Id. § 542.14(a). Generally, an inmate must obtain the appropriate form (a BP-9 form) and return it to his correctional counselor. Id. § 542.14(c)(1), (4).

Third, an inmate has two levels of appeal that he may pursue. If an inmate is dissatisfied with the institutional Warden's response, he may appeal to the Regional Director within twenty calendar days of the Warden's response, using the appropriate form (a BP-10 form). Id. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, using the appropriate form (a BP-11 form), within thirty calendar days of the date the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. § 542.15(a).

Significantly, a BOP prisoner who fears for his safety in filing a complaint or informal complaint at his facility may file a "sensitive" request directly to the appropriate Regional Director. 28 C.F.R. § 542.14(d)(1). This alternative avenue for pursuing his administrative remedies, which would avoid having to submit a remedy to anyone at USP Lee, was available to Knutson. Canfield Dec. ¶ 33, ECF No. 58-1.

**C. Knutson's Failure to Exhaust**

Knutson admits in his complaint that he did not exhaust his administrative remedies. Am. Compl. 18, ECF No. 103 ("I Todd Knutson have not exhausted any administrative remedies . . . ."). Instead, as noted, he claims that he did not attempt to exhaust his administrative remedies because he was fearful of further attacks by USP Lee staff and feared retaliation by them. Compl. at 7, ECF No. 1. He further contends that it was not "feasible" for him to file within twenty days of the incident because of his concern for his safety. For support, Knutson presents his own testimony and testimony from other inmates making the general accusation that USP Lee staff threaten to retaliate, or do retaliate, against inmates who file administrative remedies. One of the statements, for example, references threats of bodily harm or false disciplinary charges. ECF

Nos. 22, 50. The statements do not identify any specific retaliatory threat that was made to Knutson, however. For several reasons, Knutson's assertions are insufficient to meet his burden to show that remedies were unavailable to him.

First of all, a general fear of "retaliation" does not render administrative remedies "unavailable." See Pickens v. Lewis, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) ("[U]nsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment."). Knutson's allegations do not constitute more than "unsubstantiated and conclusory assertions" of unavailability. See id. He has identified post-lawsuit comments and alleged threats toward him. But only two of those, discussed next, even referred to his filing of anything, and neither of those threatened retaliation for filing of a grievance. See McBride, 807 F.3d at 988 (concluding that alleged threats failed to satisfy Turner's objective prong where the statements made had no "apparent relation to the use of the grievance system").

The first is the alleged statement by Lt. Hamilton, referenced supra note 5, that Knutson "should be ashamed of himself" for "fil[ing] on" Hamilton. The second is an alleged statement by Dr. Bailey in which she said that she got his "stuff in the mail" (referring to his lawsuit); and then said, "It's not nice to lie about staff," and "Don't expect anything from me." ECF No. 18 at 6. Both defendants deny under oath ever making those statements or any derivation of them. Hamilton Decl. ¶¶ 5–6, ECF No. 58-4; Bailey Decl. ¶¶ 3–4, ECF No. 58-3. In any event, the timing of the alleged statements is such that Knutson cannot rely on them as having caused him

not to file any administrative remedy. Hamilton's statement was allegedly made on September 3, 2020, and Bailey's was made after Knutson filed his lawsuit in early August 2020. Both statements, therefore, were made after the BOP's deadline for pursuing administrative relief had expired, as related to Knutson's claims, all of which arose on July 1 or 2. Thus, Knutson cannot rely on either statement as contributing to his decision not to pursue his administrative remedies.

Second, as noted above, a prisoner who fears retaliation for filing an internal complaint may file a "sensitive" request instead, requesting relief directly from the Regional Director. If Knutson was sufficiently concerned about retaliation by anyone at USP Lee, he could have filed a sensitive request. He did not and he offers no valid reason for not doing so.

Third, and despite his claims that he did not file because he feared retaliation, Knutson in fact filed administrative remedies in the same time-frame, including ones challenging the disciplinary conviction he received as a result of his July 1 conduct that resulted in the initial use-of-force incident. See Canfield Decl. ¶ 35 & Att. A, ECF No. 58-1.[8] Specifically, Special Investigative Agent Canfield testifies:

> Plaintiff has filed three administrative remedies since his arrival at USP Lee. These administrative remedies relate to the appeal of sanctions that Plaintiff received through the prison discipline system. Plaintiff has never filed a remedy, sensitive or generally, regarding staff misconduct. Plaintiff has not exhausted his administrative remedies regarding his requested relief.

Id.

This is significant because any claim that remedies were unavailable to Knutson "is belied" by the fact that he actually filed administrative remedies during the same time. Stohl v. Eastern

---

[8] It is not possible to verify Canfield's statement based on the supporting documentation he provided because it does not include copies of the grievances themselves. Regardless, Knutson does not dispute Canfield's testimony on the point.

Reg'l Jail, No. 1:14CV109, 2015 WL 5304135, at *7 (N.D.W. Va. Sept. 8, 2015); see also Pickens, 2017 WL 3277121, at *5 (concluding that remedies were not unavailable, in part because the plaintiff submitted other grievances during the relevant time period). Analyzing Knutson's claim under the Turner test described above, this fact is particularly probative. Specifically, as noted, Turner requires that the threat both be sufficiently serious that it would objectively deter a reasonable prisoner from filing a grievance and also a threat that subjectively deterred that particular plaintiff. 541 F.3d at 1085. Under that test, Knutson's filing of other administrative remedies severely undermines any suggestion that any alleged threats subjectively deterred him.

In his September 11, 2020 affidavit, Knutson avers that he still does not feel safe filing an internal complaint, but he will do it "if the court wants it done." ECF No. 14 at 10. At the time of that statement—and certainly now—pursuit of administrative remedies clearly would be outside the twenty-day time limit set by the BOP. The Supreme Court has held, moreover, that the PLRA requires "proper exhaustion" of available remedies, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding." Woodford v. Ngo, 548 U.S. 81, 90–91 (2006). Thus, an inmate's failure to follow the required procedures of the BOP's administrative remedy process, including time limits, or to exhaust all levels of administrative review, is not "proper exhaustion" and will bar the claim. See id. at 90. The court cannot simply permit Knutson to file his administrative remedies at this late date as to these incidents. See Ross, 136 S. Ct. at 1856 (noting that district courts may not "excuse a failure to exhaust").

For all of these reasons, based on the current record, Knutson has failed to show a

likelihood of success on the merits because he cannot show that he exhausted his available administrative remedies.

Turning to his specific requests, moreover, there are additional reasons why injunctive relief is not warranted. As to his request to be transferred to a state prison or a different federal facility, courts must be particularly cautious in granting any injunctive relief that interferes with prison officials' management of prisons. See Owens v. FCI Beckley, No. 5:12-3620, 2013 WL 623089, at *5 (S.D.W. Va. Jan. 31, 2013) ("[P]reliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances). This caution is especially warranted in the context of housing assignments for prisoners, which, by statute, the BOP is tasked with making. Cline v. Harmon, No. 5:11-CV-00870, 2012 WL 692974, at *5 (S.D.W. Va. Mar. 2, 2012) (denying preliminary injunction in Bivens action seeking transfer to a different prison and noting that 18 U.S.C. § 3621 vests sole discretion in the BOP to determine the place of a prisoner's imprisonment).

Similarly, as to Knutson's request that the court issue an order preventing retaliation, such relief is not appropriate here. Knutson lists the names of a number of officers that he fears will retaliate against him, ECF No. 14 at 12, but he bases his fear primarily on the past assault, not on any specific threats of future harm by them. See also Williams v. Maryland, No. CIV. A. DKC 09-0879, 2011 WL 3422825, at *9 (D. Md. Aug. 3, 2011) (denying prisoner's motion for preliminary injunction where plaintiff had only speculative and "unsubstantiated fears" of retaliation from corrections officers). Furthermore, it is worth noting that Knutson's amended complaint does not plead a retaliation claim under the First Amendment, nor does one appear viable. See Tate v. Harmon, No. 7:19-CV-00609, 2020 WL 7212578, at *6 (W.D. Va. Dec. 7,

13

2020) (collecting authority declining to extend <u>Bivens</u> to a First Amendment retaliation claim and holding the same), <u>appeal docketed</u>, No. 21-6109 (4th Cir. Jan. 21, 2021)).[9]

For all of these reasons, the court will deny Knutson's requests for preliminary injunctive relief.

### III. OTHER PENDING MOTIONS

The court addresses briefly other pending motions in the case.

**A. Motions Mooted by Ruling**

Because the court determined that it could rule on the written record, without a hearing, and will deny Knutson's motions for preliminary injunctive relief, a number of other motions are now moot. These include all of the following, which will all be denied without prejudice as moot:

1. Non-party Samuel Silva's motion to quash, ECF No. 69;
2. Knutson's motions for all evidence needed, ECF Nos. 84, 93;[10]
3. Knutson's motion for hearing, ECF No. 92;
4. Knutson's motion to deny the use of his BOP psychology records, ECF No. 98;[11] and
5. Knutson's motion for the issuance of subpoenas, ECF No. 102.

---

[9] If Knutson wants to file a separate lawsuit alleging retaliation or some other claim, he is free to do so. But he should consider carefully what claims, if any, he chooses to file. <u>See</u> 28 U.S.C. § 1915(g) (restricting a prisoner from proceeding <u>in forma pauperis</u> if he has had three or more prior civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim, unless he is under imminent danger of serious physical injury).

[10] Some of the requested evidence Knutson already possesses or has been shown, and some of it he has been advised does not exist. In any event, to the extent that these are requests for discovery (as opposed to requesting evidence for any hearing on the motion for preliminary injunction), they are more properly directed toward defendants or issued as subpoenas for third parties; they are not requests properly directed to the court. The court notes, however, that it also is granting non-party Warden Streeval's motion for protective order. <u>See</u> <u>infra</u> Section III-D.

[11] This motion requests that the court not consider Knutson's psychology records in ruling on his motions. The court has not relied on those records, in whole or in part, in denying Knutson's requests for preliminary injunctive relief. But the court issues no ruling at this time as to the relevance of those records generally, or whether they are relevant to defendants' pending dispositive motion.

**B. Motions for Appointment of Expert, ECF No. 87 and Appointment of Counsel, ECF No. 91**

Knutson has moved the court to appoint a computer forensic specialist, in order to recover certain video of the underlying incident, ECF No. 87, although Canfield has indicated that much of that video no longer exists. See generally 2nd Canfield Decl., ECF No. 85-1. At this point, the court will deny the motion without prejudice. In the event that the court grants defendants' motion to dismiss based on Knutson's failure to exhaust his administrative remedies, then video—even of the underlying incident—is irrelevant. Thus, the court will deny the motion without prejudice. In the event that any claims survive dismissal, Knutson can motion the court again for appointment of an expert.

Knutson also requests the appointment of counsel. ECF No. 91. As he has been repeatedly advised, however, the court cannot require counsel to represent an indigent civil plaintiff. At this point in the case, moreover, the court concludes that there are not exceptional circumstances warranting the appointment of counsel for Knutson. Accordingly, his motions for an expert and for counsel will be denied without prejudice.

**C. Motions to Amend/Correct Complaint, ECF Nos. 89, 103**

In two separately filed motions, Knutson has requested that the court allow him to amend or correct his complaint. By way of background, after Knutson previously filed motions to amend, the court directed him to file an amended complaint. ECF No. 81 at 4. In his first motion to amend, ECF No. 89, which is a one-page document, he states that he would like to continue with his complaint with no changes to his Bivens claims, but would like to add an "equal protection action" against USP Lee for failing to properly investigate and correct staff misconduct. Knutson's second motion to amend, ECF No. 103, is actually an amended

15

complaint, filed by him as directed by the court, and adds an equal protection claim against the individual defendants on the basis of gender identity.

Defendants already have treated ECF No. 103 as Knutson's amended complaint, and the court will do so, as well. Accordingly, both motions to amend, ECF Nos. 89, 103, will be granted only insofar as ECF No. 103 will be treated as Knutson's amended complaint. The court expresses no opinion at this time, however, as to the merits of any of his added claims or whether they will survive the motion to dismiss.

**D. Streeval's Motion for Protective Order, ECF No. 85**

Although Knutson has requested that the court direct non-party Streeval to produce a number of documents and video recordings, Streeval filed a motion for protective order, ECF No. 85, to which Knutson has responded, ECF No. 101. Now that some defendants have responded to the complaint, and in light of both the court's ruling here and the pending motion to dismiss, the court will grant Streeval's motion for protective order and will not require Streeval to respond to any of the requests for additional documents, to the extent that they can be construed as discovery requests directed toward Streeval. After a ruling on the motion to dismiss, discovery may be permitted on any claims that survive.

## IV. CONCLUSION

An appropriate order setting forth all of the foregoing rulings will be entered.

It is so **ORDERED**.

Entered: February 3, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.02.03 10:03:58
-05'00'

Michael F. Urbanski
Chief United States District Judge