IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **TODD KNUTSON,** | ) | Civil Action No. 7:20-cv-00455 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| **LT. C. HAMILTON, et al.,** | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Todd Knutson, an inmate in Bureau of Prisons ("BOP") custody proceeding pro se, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1] His complaint asserts claims against numerous correctional officers, a doctor, and a nurse, all of whom worked at the United States Penitentiary in Lee County ("USP Lee") at the time of the alleged events. All of his claims arise from events that occurred on July 1 and 2, 2020. He alleges that on July 1, the day he arrived at USP Lee, he was brutally physically assaulted by a group of correctional officers while he was restrained. Thereafter, he was placed in the Special Housing Unit ("SHU"), where he alleges that about every two hours for approximately twenty-two hours, officers entered his cell and assaulted him.

In addition to Eighth Amendment claims arising from these events, Knutson's amended complaint includes equal protection claims against defendants, based on his assertion that during the assaults, certain officers referred to him as a "piece of transgender s**t," a "transgender

---

[1] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. See United States v. Marshall, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

motherf\*\*\*er," and a "transgender b\*\*\*h."² Am. Compl. 2, 8, ECF No. 103. He alleges that this constitutes discrimination and unequal treatment on the basis of his "gender identity."

Pending before the court are three motions, all of which are addressed herein. The first is a motion to dismiss or, in the alternative, for summary judgment, that is brought on behalf of the defendants who have been served.³ The court has considered materials outside the pleadings submitted by both parties, and so the court will treat defendants' motion as one for summary judgment under Federal Rule of Civil Procedure 56, as opposed to a motion to dismiss.

Defendants' primary argument is that Knutson failed to exhaust his administrative remedies and cannot demonstrate that those remedies were unavailable to him. Defendants' motion also contends that the allegations in Knutson's complaint against the two medical personnel—Dr. Bailey and Nurse Parker—fail to state a claim. ECF No. 107 at 13–14 (describing the allegations as consisting of verbal harassment and an after-the-fact failure to intervene in the assaults against him and arguing that they do not rise to the level of an Eighth Amendment violation). Knutson has responded, defendants have filed a reply, and the motion is ripe for disposition.⁴ As discussed herein, Knutson has not presented sufficient evidence to show that he exhausted available administrative remedies. For this reason, the court will grant the summary judgment motion.

---

² Throughout this opinion, the court has corrected errors in spelling, capitalization, and grammar when quoting from Knutson's submissions.

³ By opinion and entered February 3, 2021, the court granted plaintiff's motion to amend and accepted his amended complaint for filing. In doing so, the court directed the Clerk to update the list of defendants accordingly. None of the newly-added defendants, however, have been served.

⁴ Although defendants filed their motion to dismiss and alternative motion for summary judgment before the court granted Knutson leave to file his amended complaint, they treated his proposed amended complaint as his operative complaint. Thus, their motion addresses the proper complaint.

Also pending before the court are two separate motions filed by Knutson: (1) a motion to stay; and (2) a motion to request a jury trial. ECF Nos. 120, 124. Those motions will be denied as moot.

## I. BACKGROUND

Knutson's amended complaint alleges that there was an initial use-of-force against him at USP Lee on July 1, 2020.[5] Immediately thereafter, the defendant correctional officers at USP Lee assaulted him while he was fully restrained. They then repeatedly assaulted him, every two hours, while he was in an observation cell and in ambulatory restraints over a twenty-two hour period that followed, ending on the evening of July 2. According to Special Investigative Agent Canfield, prisoners in ambulatory restraints are required to be checked every 15 minutes through the observation cell window. Every two hours, a lieutenant enters the cell to examine the restraints closely for tampering or other safety-related hazards. Other staff members assist by holding a plastic shield between the inmate and the lieutenant. See Canfield Decl. ¶¶ 18–21, ECF No. 58-1. "These review procedures were followed throughout the time [Knutson] was in

---

[5] The record contains affidavits disputing Knutson's version of events and specifically disputing that he was assaulted while restrained. The record also includes contemporaneous reports that describe instead that Knutson was refusing to enter his cell, became confrontational with officers, threatened them, and grabbed Officer Dickenson by the vest, took him to the ground, and tried to choke him. Several officers assisted in gaining control of Knutson and escorting him to the SHU. According to those reports, the minimal amount of force was used to regain control of Knutson and place him in restraints. Knutson states in his initial affidavit that he is not complaining about being placed in restraints, but about the assaults after he was already restrained. ECF No. 14 at 1–2 ("I'm not arguing the use of force that was used to put me in restraints at all. My complaint is what the officers did to me while in full restraints well after the main incident. [T]hat's what violated my Eighth Amendment rights."). In his amended complaint, he takes the opposite position and challenges the force used to put him in restraints. Specifically, he alleges that, when initially restraining him, the officers could have simply put handcuffs on him, but instead attempted to take him to the ground. He now asserts that he only grabbed Officer Dickenson as "a natural reaction to attempt to catch" himself before he fell. Am. Compl. 4–5, ECF No. 103. Any disputes of fact as to the incident itself are not material to the court's resolution of Knutson's claims, which is based solely on his failure to exhaust his administrative remedies.

3

restraints." Id. ¶ 22. Thus, it appears Knutson is claiming that, during each of the in-cell checks, he was subjected to excessive force.

Knutson also alleges that two of the defendants—a physician and nurse at USP Lee—made comments to him that suggested they knew he was being assaulted by officers or had been assaulted. He alleges that Dr. Bailey, a psychologist at USP Lee, could have stopped the assaults by reporting the staff misconduct, but she did not. He also alleges that Dr. Bailey did not provide him needed medical treatment but instead made discriminatory statements to him about his gender identity. As noted, his amended complaint also contains an equal protection claim based on the same events.

## II. DISCUSSION

### A. Motion for Summary Judgment

#### 1. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 930 (4th Cir. 1990).

**2. Exhaustion under the Prison Litigation Reform Act**

The Prison Litigation Reform Act requires a prisoner-plaintiff to exhaust his available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Moreover, proper exhaustion of remedies is required, which includes "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91–92 (2006). District courts may not "excuse a failure to exhaust." Ross v. Blake, 578 U.S. 1174, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable. Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it

5

becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859–60; see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

Knutson argues that the third scenario identified by the Ross Court occurred here. Specifically, Knutson's amended complaint alleges that he was fearful of further attacks by the correctional officers and that is why he did not attempt to exhaust his administrative remedies while housed at USP Lee. Am. Compl. 18. As to whether his fear (or other prisoners' fears based on threats made to them) rendered the BOP's remedies "unavailable," the court applies a two-part test that a number of other circuits use, adopted from the Eleventh Circuit's decision in Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008).[6] Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (adopting the Turner test); McBride v. Lopez, 807 F.3d 982, 987-88 (9th Cir. 2015) (same); Tuckel, 660 F.3d at 1254 (same). The test requires an inmate to show: (1) subjectively, that "the threat did actually deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process;" and (2) objectively, that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." Rinaldi, 904 F.3d at 268 (quoting Turner, 541 F.3d at 1085).

---

[6] The court's research does not disclose that the Fourth Circuit has expressly adopted—or rejected—the Turner test. But nothing prohibits its use and, finding it appropriate, the court will apply it here.

6

### 3. The BOP's Administrative Remedy Procedure

The BOP's administrative remedy procedure is relatively straightforward, and basically involves three steps: the filing of an informal complaint, the filing of a formal complaint, and two levels of appeal. Slightly different procedures apply to appeals of disciplinary hearings, but for a claim, like Knutson's, alleging staff misconduct, the first step requires the inmate to "present an issue of concern informally to the staff." 28 C.F.R. § 542.13(a). Each Warden has established procedures for inmates at his institution to do so. Id.

Second, if an inmate is unable to resolve his complaint informally, he may file a formal written complaint (an "administrative remedy request") with the institution on the proper form within twenty calendar days of the incident at issue. Id. § 542.14(a). Generally, an inmate must obtain the appropriate form (a BP-9 form) and return it to his correctional counselor. Id. § 542.14(c)(1), (4).

Third, an inmate has two levels of appeal that he may pursue. If an inmate is dissatisfied with the institutional Warden's response, he may appeal to the Regional Director within twenty calendar days of the Warden's response, using the appropriate form (a BP-10 form). Id. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel, using the appropriate form (a BP-11 form), within thirty calendar days of the date the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. § 542.15(a).

Significantly, a BOP prisoner who fears for his safety in filing a complaint or informal complaint at his facility may file a "sensitive" request directly to the appropriate Regional Director. 28 C.F.R. § 542.14(d)(1). This alternative avenue for pursuing his administrative

remedies, which would avoid having to submit a remedy to anyone at USP Lee, was available to Knutson. Canfield Dec. ¶ 33, ECF No. 58-1.

### 4. Knutson's Failure to Exhaust[7]

Knutson admits in his complaint that he did not exhaust his administrative remedies as to any of his claims. Am. Compl. 18, ECF No. 103 ("I Todd Knutson have not exhausted any administrative remedies . . . ."). Instead, as noted, he claims that he did not attempt to exhaust his administrative remedies because he was fearful of further attacks by USP Lee staff and feared retaliation by them. Id. He further contends that it was not feasible for him to file within twenty days of the incident because of his concern for his safety. For support, Knutson presents his own testimony and testimony from other inmates making the general accusation that USP Lee staff threaten to retaliate, or do retaliate, against inmates who file administrative remedies. One of the statements, for example, references threats of bodily harm or false disciplinary charges. ECF Nos. 22, 50. The statements do not identify any specific retaliatory threat that was made to Knutson, however.

For several reasons, Knutson's assertions are insufficient to meet his burden to show that remedies were unavailable to him. First of all, a general fear of "retaliation" does not render administrative remedies "unavailable." See Pickens v. Lewis, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) ("[U]nsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a

---

[7] In a recent filing, Knutson claims that he also is attempting to exhaust a Federal Tort Claim Act claim. ECF No. 129. His amended complaint does not include an FTCA claim, so the court's ruling does not affect any right to file such a claim.

8

genuine issue of material fact sufficient to withstand summary judgment."). Knutson's allegations do not constitute more than "unsubstantiated and conclusory assertions" of unavailability. See id. He has identified post-lawsuit comments and alleged threats toward him. But only two of those, discussed next, even referred to his filing of anything, and neither of those threatened retaliation for filing of a grievance. See McBride, 807 F.3d at 988 (concluding that alleged threats failed to satisfy Turner's objective prong where the statements made had no "apparent relation to the use of the grievance system").

The first is an alleged statement by Lt. Hamilton that Knutson "should be ashamed of himself" for "fil[ing] on" Hamilton. The second is an alleged statement by Dr. Bailey in which she said that she got his "stuff in the mail" (referring to his lawsuit); and then said, "It's not nice to lie about staff," and "Don't expect anything from me." ECF No. 18 at 6. Both defendants deny under oath ever making those statements or any derivation of them. Hamilton Decl. ¶¶ 5–6, ECF No. 58-4; Bailey Decl. ¶¶ 3–4, ECF No. 58-3. In any event, the timing of the alleged statements is such that Knutson cannot rely on them as having caused him not to file any administrative remedy. Hamilton's statement was allegedly made on September 3, 2020, and Bailey's was made after Knutson filed his lawsuit in early August 2020. Both statements, therefore, were made after the BOP's deadline for pursuing administrative relief had expired, as related to Knutson's claims, all of which arose on July 1 or 2. Thus, Knutson cannot rely on either statement as contributing to his decision not to pursue his administrative remedies.

Second, as noted above, a prisoner who fears retaliation for filing an internal complaint may file a "sensitive" request instead, requesting relief directly from the Regional Director. If Knutson was sufficiently concerned about retaliation by anyone at USP Lee, he could have filed

a sensitive request. He did not, but contends—in an unsworn document, ECF No. 120—that he did not do so because any response to his sensitive request would have been opened by the UPS Lee mailroom. He offers no evidence based on personal knowledge to show that the regional office responds to such sensitive requests via mail that would be opened in the mailroom.

Third, and despite his claims that he did not file because he feared retaliation, Knutson in fact filed administrative remedies in the same time-frame, including ones challenging the disciplinary conviction he received as a result of his July 1 conduct that resulted in the initial use-of-force incident. See Canfield Decl. ¶ 35 & Att. A, ECF No. 58-1.[8] Specifically, Special Investigative Agent Canfield testifies:

> Plaintiff has filed three administrative remedies since his arrival at USP Lee. These administrative remedies relate to the appeal of sanctions that Plaintiff received through the prison discipline system. Plaintiff has never filed a remedy, sensitive or generally, regarding staff misconduct. Plaintiff has not exhausted his administrative remedies regarding his requested relief.

Id.

This is significant because any claim that remedies were unavailable to Knutson "is belied" by the fact that he actually filed administrative remedies during the same time. Stohl v. Eastern Reg'l Jail, No. 1:14CV109, 2015 WL 5304135, at *7 (N.D.W. Va. Sept. 8, 2015); see also Pickens, 2017 WL 3277121, at *5 (concluding that remedies were not unavailable, in part because the plaintiff submitted other grievances during the relevant time period). Analyzing Knutson's claim under the Turner test described above, this fact is particularly probative. Specifically, as noted, Turner requires that the threat both be sufficiently serious that it would objectively deter a

---

[8] It is not possible to verify Canfield's statement based on the supporting documentation he provided because it does not include copies of the grievances themselves. Regardless, Knutson does not dispute Canfield's testimony on the point.

10

reasonable prisoner from filing a grievance and also a threat that subjectively deterred that particular plaintiff. 541 F.3d at 1085. Under that test, Knutson's filing of other administrative remedies severely undermines any suggestion that any alleged threats <u>subjectively</u> deterred him.

In his September 11, 2020 affidavit, Knutson avers that he still does not feel safe filing an internal complaint, but he will do it "if the court wants it done." ECF No. 14 at 10. He subsequently has filed several document supporting to show that, after his transfer from USP Lee in May 2021 (which was approximately nine months after he filed his lawsuit), he began to exhaust administrative remedies. <u>See, e.g.</u>, ECF Nos. 120, 126, 127. His belated pursuit of administrative remedies clearly was outside the twenty-day time limit set by the BOP.[9] As such, his claims that, once at USP Coleman, staff further interfered with his ability to exhaust, does not create a dispute of fact precluding summary judgment.[10]

As noted above, the PLRA requires "proper exhaustion" of available remedies, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the

---

[9] While administrative remedies must typically be filed by inmates within the specified time limits, where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. 28 C.F.R. § 542.14(b). The regulations explain:
> In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

<u>Id.</u> Knutson does not allege any of those circumstances.

[10] Knutson complains that a non-defendant filed either a BP-9 or BP-8 "twenty-seven days late." He is not consistent about which form was filed late, <u>see</u> ECF No. 127 at 1 (referencing a BP-9 filed "27 days later" and saying he wanted a memo from the person stating that she "filed [his] BP-8 27 days later.").

11

course of its proceeding." Woodford, 548 U.S. at 90–91. Thus, Knutson's failure to follow the required procedures of the BOP's administrative remedy process, including time limits, or to exhaust all levels of administrative review, is not "proper exhaustion" and bars his claims. See id. at 90. The court cannot simply permit Knutson to file his administrative remedies at this late date as to these incidents. See Ross, 136 S. Ct. at 1856 (noting that district courts may not "excuse a failure to exhaust"); Woodward v. Daugherty, 845 F. Supp. 2d 681, 684 (W.D.N.C. 2012) ("[A] prisoner does not comply with the mandatory requirements of 42 U.S.C. § 1997e(a) by exhausting his remedies during the course of litigation; exhaustion must occur before the filing of the lawsuit or the case must be dismissed." (citing Moore, 517 F.3d at 725)); Green v. Rubenstein, 644 F. Supp. 2d 723, 743 (S.D.W. Va. 2009) ("[A] prisoner . . . may not exhaust administrative remedies during the pendency of the federal suit." (quoting Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

For all of these reasons, the court concludes that Knutson has failed to put forth sufficient evidence for any factfinder to conclude that he exhausted available remedies, or that the remedies he could and should have pursued were unavailable. Accordingly, his claims must be dismissed without prejudice for failure to exhaust.

**B. Claims Against Unserved Defendants**

As noted in the background section, the court permitted Knutson to file an amended complaint, and that amended complaint named a number of additional defendants to the action. None of the newly added defendants, however, have been served.

All of the claims against these additional defendants arise from the same events for which the court has already determined Knutson failed to exhaust. Although the court recognizes that

a failure to exhaust is an affirmative defense, courts have the "ability to dismiss complaints for failure to exhaust administrative remedies where the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense." Custis v. Davis, 851 F.3d 358, 362 (4th Cir. 2017); cf. Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) (holding that in the rare case where the failure to exhaust appears on failure to exhaust appears on the face of his amended complaint, a court may sua sponte dismiss a complaint for failure to exhaust).

Here, the as-of-yet unserved defendants obviously have not raised the issue, but all other defendants (whose counsel likely would also represent most, if not all, of the unserved defendants) raised the defense, and Knutson has been given a full opportunity to respond. Given that the issue has been fully and thoroughly briefed as to many of the defendants, the court declines to allow the resources of the parties and the court to be spent on the futile exercise of requiring that service be effected on all of the remaining defendants and the that parties brief the same issues a second time, with the inevitable same result. Accordingly, the claims against the unserved defendants also will be dismissed without prejudice for failure to exhaust.

## C. Other Pending Motions

To the extent the substance of Knutson's other motions (ECF Nos. 120, 124) was relevant, it has been referenced in this opinion. The specific relief he requests, however, is moot. Thus, these motions will be denied as moot.

## III.   CONCLUSION

For the reasons discussed above, the court will grant defendants' motion for summary judgment and dismiss without prejudice all claims against all defendants.  The remaining motions will be denied as moot.  An appropriate order will be entered.

It is so **ORDERED**.

Entered:  September 13, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.09.13 11:57:52 -04'00'

Michael F. Urbanski
Chief United States District Judge